UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        'O'      JS-6

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS): DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (Dkt. No. 56, filed October 9, 2014)

## I.    INTRODUCTION

Plaintiff Nancy Turner filed this action on June 17, 2013, against the County of
Los Angeles ("the County"), Los Angeles County Sheriff Leroy David Baca, Robert
Keffer, Timothy Crise, Shaun Kennedy, Kelly Marchello, Jason Bates, Sergio Mancilla,
Matt Dendo, Richard Conley, and Mario Jimenez.[1]  The operative Second Amended
Complaint ("SAC") was filed on December 27, 2013.  Dkt. No. 40.  The SAC raises
several common law tort claims as well as civil rights claims under federal law.[2]

On October 9, 2014, defendants filed a motion for summary judgment or, in the
alternative, partial summary judgment.  Dkt. No. 56.  Plaintiff filed an opposition on
November 17, 2014, Dkt. No. 61, and defendants filed a reply on November 24, 2014,
Dkt. No. 62.  The Court held a hearing on December 8, 2014.  For the reasons that
follow, the Court GRANTS defendants' motion.

---

[1] Plaintiff initially named the Los Angeles County Sheriff's Department ("LASD")
as a defendant.  By stipulation of the parties, the Court dismissed the LASD with
prejudice by order dated July 25, 2013.  Dkt. No. 25.  The Court later approved a
stipulation dismissing with prejudice all claims against Mario Jiminez.  Dkt. No. 52.

[2] Pursuant to another stipulation, the SAC's claim against Keffer, Crise, and
Kennedy for failure to intervene has been dismissed with prejudice.  Dkt. No. 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**     **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|----------|------------------------|------|-------------------|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

## II.    FACTUAL BACKGROUND

### A.    The Altercation in Plaintiff's Apartment

In April of 2012, plaintiff and her partner, Frank Edmonds, lived in an apartment on Chadron Avenue in Lawndale near the City of Los Angeles, California. Def.'s Statement of Uncontroverted Material Facts ("DMF") ¶ 2; Pl.'s Statement of Genuine Issues ("PGI") ¶ 2. On April 22, 2012, the LASD received a 911 call in which the caller reported hearing a female screaming, and stated that the couple living at the apartment from which the scream originated had a history of violence. DMF ¶ 3; PGI ¶ 3. Defendants Keffer and Crise (male LASD deputies) were dispatched to respond to this call. DMF ¶¶ 4, 5; PGI ¶¶ 4, 5. Defendants Marchello and Kennedy, also LASD deputies, assigned themselves to assist. DMF ¶ 4; PGI ¶ 4. Marchello is female, and Kennedy is male. DMF ¶ 11; PGI ¶ 11.

Deputies Keffer and Crise arrived first at plaintiff's second floor apartment. DMF ¶ 5; PGI ¶ 5. They knocked, announced themselves as law enforcement officers, and requested to enter the apartment. DMF ¶ 6; PGI ¶ 6. Plaintiff answered the door wearing a towel. DMF ¶ 7; PGI ¶ 7. She allowed the deputies to enter but denied that any domestic violence was occurring. DMF ¶ 9; PGI ¶ 9. At the time, Edmonds was partially dressed and seated on a couch in the living room. DMF ¶ 8; PGI ¶ 8. Deputy Keffer expressed his desire to speak with plaintiff and Edmonds separately. DMF ¶ 10; Crise Decl. ¶ 12. At this point, Deputies Marchello and Kennedy arrived at the scene. DMF ¶ 11; PGI ¶ 11.

A physical altercation ensued between Edmonds and Keffer. DMF ¶ 12; PGI ¶ 12. Crise, Marchello, and Kennedy immediately came to Keffer's assistance. DMF ¶ 13; PGI ¶ 13. During the altercation, Kennedy made a radio distress call requesting assistance and stating that the deputies were involved in a fight. DMF ¶ 14; PGI ¶ 14. Sergeants Conley and Bates responded to this call DMF ¶ 15; PGI ¶ 15. The deputies eventually subdued Edmonds, but only after using pepper spray and multiple physical restraints. DMF ¶ 18; PGI ¶ 18. During the altercation, several neighbors crowded into the apartment's doorway. DMF ¶ 16; PGI ¶ 16. One of these neighbors, Clarence Davis, filmed part of the incident on his cellular telephone. Id. Plaintiff cannot be seen on this video, although she can be heard speaking. DMF ¶ 17; PGI ¶ 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

### B.   Plaintiff's Interactions with the Los Angeles Sheriff's Department

The SAC alleges that during the altercation, Marchello seized plaintiff, twisted her wrist, placed her in handcuffs, and put her in the back of a patrol car, and that plaintiff's towel fell off as she was walking downstairs so that onlookers saw her naked.  DMF ¶ 19; PGI ¶ 19; SAC ¶¶ 38, 40, 41.  In her deposition, however, plaintiff admitted she does not know who handcuffed her, describing the person as a "[w]oman or women" and "[p]robably Hispanic," but testifying that she never saw the woman who grabbed and handcuffed her, and did not know her name or race.  Turner Depo. (Apr. 25, 2014) at 14:14–15:5, 86:8-20.  Plaintiff elaborated that she believes a second unidentified female officer touched her, id. at 15:25–17:24, but that she never saw this officer either, id. at 73:15-20, and that she only "presumes" there were two people because it "seemed like I felt someone else trying to hold the towel," id. at 88:11-15.  Plaintiff also testified that an unidentified male officer said, "Get her out of here," referring to removing plaintiff from her apartment, and that multiple unidentified people then grabbed her from behind and removed her from the apartment.  Id. at 82:8-21, 85:3-7; see also id. at 126:12-17 (plaintiff's testimony that unidentified officers "man-handl[ed] her out of the apartment).

Plaintiff testified that her towel fell off when she was grabbed from behind and handcuffed, and that someone picked the towel up and wrapped it around her again within "seconds."  Turner Depo. at 86:18–87:20.  According to plaintiff, she was then shoved down a walkway and stairs, and put in the back of the patrol car naked, her towel having fallen off again.  Id. at 87:23–88:5.  Plaintiff stated that she was naked in the back seat of the patrol car.  Turner Depo. at 87:23-24.  She averred that she was in handcuffs for "at least an hour."  Id. at 19:6-12.  Plaintiff testified that at some point, an unidentified police officer brought plaintiff some clothes and removed the handcuffs.  Id. at 93:11-21. Plaintiff testified that she was humiliated and still suffers mentally as a result of people seeing her shoved down the stairs naked, and has nightmares about the incident.  Turner Depo. at 110:19–111:3. 112:13-17, 113:12-18.

In his deposition, plaintiff's neighbor Clarence Davis testified that during the altercation he saw a Hispanic male deputy tell plaintiff to "get out . . . pushing her out and telling her to get out of the way."  Davis Depo. (Aug. 1, 2012) at 70:6-18.  Davis also testified that the same Hispanic male officer tried to push plaintiff into Davis' apartment using both hands.  Id. at 71:18-23, 74:15-23.  Davis also testified that he saw plaintiff being escorted downstairs by a single male officer, whom he could not identify.  Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| --- | --- | --- | --- |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

78:11–79:11. Davis later indicated that this officer was not one of the original officers to respond to the scene. Id. at 90:21-25. According to Davis, plaintiff was wearing a towel while being pushed by the male officer, and was wearing the towel when she was placed in the patrol car. Id. at 72:10-14, 80:6-10. Another neighbor, in an interview with police officers shortly after the altercation, stated that plaintiff was in the police car in a towel. See Def. Ex. F.

Defendants offer evidence that Marchello, Kennedy, Crise, and Keffer never left the apartment until after Edmonds was removed from the apartment, which occurred after plaintiff had been escorted away. DMF ¶ 23. Defendants also offer testimony that Marchello, Kennedy, Crise, and Kennedy never touched or threatened to touch plaintiff, never escorted her from the apartment, never handcuffed her, never detained her in a patrol car, and never saw her naked. DMF ¶¶ 24, 25, 32; see, e.g., Marchello Decl. ¶ 21 ("At no time on April 22, 2012, did I ever touch Nancy Turner or threaten to touch her. I did not escort her downstairs from the apartment, I did not handcuff her, and I did not place her in the backseat of a patrol car.").[3] Bates has declared that he spoke with plaintiff briefly while she was still inside the patrol car, and that plaintiff denied being subjected to any force, did not complain about being detained, and never stated that she had been handcuffed.[4] DMF ¶ 31; Bates Decl. ¶ 21.

---

[3]Plaintiff asserts that her deposition testimony contradicts this, but the testimony she cites in support of this assertion merely states that an unidentified "older" police officer said, "Get [plaintiff] out of here." Turner Depo. at 82:8-21.

[4]Plaintiff objects to this portion of Bates' declaration as inadmissible hearsay. This objection is OVERRULED because Bates' recounting of plaintiff's purported statements would be admissible at trial as the statement of a party-opponent. See Fed. R. Evid. 801(d)(2)(A); United States v. Castro, 887 F.2d 988, 999-1000 (9th Cir. 1989) ("Statements by party-opponents are not hearsay and are admissible provided the statement is offered against the party and is the party's own statement."). To the extent that plaintiff objects to this and other declaration testimony on the ground that there is no other "record or mention" of the matter to which the declarant testified, the Court OVERRULES those objections as well. Declaration testimony is itself evidence that may support a motion for summary judgment so long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'          JS-6

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

### C.    The Incident's Aftermath

Bates and Conley first interacted with plaintiff when they found her in the back seat of a patrol car.  DMF ¶¶ 30, 32; PGI ¶ 30, 32.  Defendants offer testimony that plaintiff was not naked when Bates and Conley saw her in the patrol car, DMF ¶ 32, but plaintiff attests that she was placed in the car naked, Turner Depo. at 87:23-24.  Conley, in the presence of Bates, then conducted an eight-minute videotaped interview of plaintiff.  DMF ¶ 33; PGI ¶ 33.  During this interview, plaintiff indicated that police pushed her out of the apartment and down the stairs naked, and twisted her arms, hurting her wrists.[5]  See Def. Ex. G. at 00:05:55–00:06:03.

Plaintiff avers that these comments during the taped interview constituted a complaint of excessive use of force that Bates and Conley failed to investigate.  DMF ¶ 36; PGI ¶ 36.  In April 2012, LASD had a written policy regarding use of force reporting procedures, which required the reporting of any use of force "greater than that required for unresisted . . . searching or handcuffing" and "any use of force which results in an injury or a complaint of pain."  DMF ¶ 37; PGI ¶ 37.  Pursuant to the policy, any LASD personnel who use or witness reportable force are required to verbally notify their immediate supervisor with a minimum rank of sergeant.  DMF ¶ 38; PGI ¶ 38.  No deputy ever reported using force against plaintiff to either Bates or Conley.  DMF ¶ 39; PGI ¶ 39.

Defendants offer testimony that Bates and Conley did consider plaintiff's complaint in the videotaped interview, but found that it did not warrant further investigation because (1) plaintiff had made inconsistent statements in her interview and previous conversation with Bates; (2) the sergeants had not observed plaintiff to be handcuffed or naked, and had seen her wearing the same garments after exiting the patrol car that she had been wearing during the altercation; (3) no deputy reported a use of force against plaintiff; (4) witnesses interviewed at the scene did not indicate that plaintiff was naked or subjected to force; (5) LASD personnel did not observe any injuries on

---

competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

[5]Plaintiff did not, in this video interview, complain of being handcuffed or placed in the police car.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

plaintiff's wrists; and (6) the four originally involved deputies denied using force on anyone other than Edmonds. DMF ¶ 41; PGI ¶ 41. Defendants proffer evidence that Bates made an oral report regarding plaintiff's complaint to his supervisor, Lieutenant Mancilla, who concurred that no further investigation or written report was necessary. DMF ¶ 42; PGI ¶ 42. Bates summarized plaintiff's interview and listed her as a witness in his use of force report on Edmonds, which Mancilla and Captain Dendo signed. DMF ¶¶ 43, 44; PGI ¶ 43, 44.

Keffer, Crise, Marchello, and Kennedy have testified that they never conspired to violate plaintiff's rights. DMF ¶ 26. Neither Baca, Dendo, nor Mancilla were personally involved in the April 22, 2012 incident, nor did any of them directly train or supervise Keffer, Crise, Kennedy, or Marchello. DMF ¶¶ 45, 46, 47; PGI ¶¶ 45, 46, 47. Dendo declares that he watched a video of the incident taken by Bates inside the apartment, but was never made aware of any use of force as to plaintiff or any personnel complaint filed by plaintiff. Dendo Decl. ¶¶ 6, 10, 13. Mancilla declares that he read the use of force report authored by Bates as well as the incident report prepared by Keffer, and watched all videotapes submitted with the reports—including the tape of plaintiff's interview in which she asserts that she was taken from the apartment while naked and her arm twisted—but that he never reviewed any report indicating that plaintiff was naked at the scene. Mancilla Decl. ¶¶ 6, 10, 11, 15. Mancilla testifies that he concluded that plaintiff's allegations in the videotaped interview did not warrant any further investigation based on the "totality of the circumstances." Id. ¶ 16.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'          JS-6

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

"conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

Defendants seek summary judgment as to each of plaintiff's claims for relief, which the Court addresses in turn.  Plaintiff's claims against the named deputies fail because, although plaintiff alleges in her complaints that Marchello used unreasonable force on her and escorted her to a patrol car in a state of undress, plaintiff offers no admissible evidence—in her deposition, in a declaration, or otherwise—that any named defendant ever did so.  Plaintiff has failed to produce evidence supporting her claims against any of the named defendants despite her counsel's depositions of plaintiff, Keffer, Marchello, Davis, Conley, and Bates.  Moreover, plaintiff did not request additional discovery in her opposition briefing to, or at the hearing on, this motion.  Cf. Taylor v. Brockenbrough, No. CIV.A. 98-6419, 2001 WL 1632146, at *2–3 (E.D. Pa. Dec. 20, 2001) (granting summary judgment where the plaintiff had identified two officers at the scene of his alleged constitutional deprivations, but produced no evidence from which a jury could determine which, if any, officer was responsible for the alleged misconduct).  Additionally, plaintiff's claims against the County and supervisory defendants fail because plaintiff has not pled and proffered admissible evidence of an underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|----------|------------------------|------|-------------------|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

constitutional violation, or a policy that could have been the moving force behind such a violation.

### A.    Plaintiff's Assault and Battery Claims

Turner brings assault and battery claims against Keffer, Crise, Kennedy, and Marchello.  Under California law, the essential elements of an assault claim are:

> (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm.

Carlsen v. Koivumaki, 227 Cal. App. 4th 879, 890 (2014) (citation omitted).  The essential elements of battery are:

> (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching.

Id.  In an action for battery against a police officer, the plaintiff must also prove the use of unreasonable force.  Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998).[6]

The assault and battery claims against Deputies Keffer, Crise, and Kennedy fail because undisputed evidence shows that these three defendants were still in the apartment

---

[6]To the extent that plaintiff attempts to ground her assault and battery claims in 18 U.S.C. §§ 241 or 242, the Court notes that "[t]hese criminal provisions . . . provide no basis for civil liability."  Aldabe v. Aldabe, 626 F.2d 1089, 1092 (9th Cir. 1980).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

trying to subdue Edmonds when plaintiff claims she was assaulted and battered, and could not have committed the alleged offensive or harmful touching of plaintiff or created the apprehension thereof. See 5 Witkin, Summary of California Law, Torts § 385 (10th ed. 2005) (explaining that assault liability requires the "present ability to injure"). Plaintiff relies on the alleged order of one of the deputies, whom she identifies in her briefing but not her excerpted deposition testimony as Crise, to "Get [plaintiff] out of [the apartment]." But "mere words, unaccompanied by some act apparently intended to carry the threat into execution do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault." Steel v. City of San Diego, 726 F. Supp. 2d 1172, 1190 (S.D. Cal. 2010) (quoting Restatement (Second) of Torts § 31 cmt. a (2010)); see also 5 Witkin, Torts § 383 ("Mere words, however threatening, will not amount to an assault."). Even ignoring that plaintiff has not presented admissible evidence actually identifying Crise as the one who made this statement, the statement does not raise a triable issue of material fact because plaintiff could have been removed from the situation without any contact at all, and the statement is unaccompanied by any evidence of an act of these defendants that could support liability for assault, let alone battery.

Further, no admissible evidence supports the allegations of assault or battery by Marchello. In her deposition, plaintiff could not identify the person(s) who allegedly touched her, other than that she presumed she or they were female. Plaintiff's opposition admits that her theory is that "an *unidentified* deputy took Plaintiff from the landing outside her apartment to the street below." Opp'n at 9 (emphasis added). Although plaintiff points to Davis's deposition testimony that a deputy touched plaintiff and put her in a patrol car, this testimony referred to an *unidentified male* Hispanic deputy, and cannot support an assault or battery claim against Marchello.[7]  Plaintiff's brief also argues that Sergeant Conley "testified in his deposition that defendant Marchello was present on the landing outside Plaintiff's apartment at the time that Plaintiff was taken from her apartment." Opp'n at 9 (citing Pl. Ex. F.). But the Court has reviewed Conley's testimony submitted by plaintiff and finds no portion of it that raises a triable issue of

---

[7]Nor, because Davis did not identify the officer and stated that he was not one of the original deputies to respond to the scene, can it support a claim that Keffer, Crise, or Kennedy touched plaintiff—which plaintiff has not even alleged.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 | |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | | |

material fact.  Conley testified that Marchello, along with Crise, Keffer, Bates, and Conley himself, was "in the doorway" near plaintiff when Conley arrived at the scene. See Conley Depo. at 52:19-23.  Conley did not testify that "Marchello was present on the landing" when plaintiff "was taken from her apartment."  And even if he had, evidence that Marchello was *near* plaintiff is inadequate to support an inference that Marchello *touched* plaintiff in a harmful or offensive manner, or placed plaintiff in apprehension of such conduct.

To the extent that plaintiff relies on allegations in any of her complaints to oppose this motion, that reliance is misplaced because the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (9th Cir. 1986) (quoting Fed. R. Civ. P. 56, advisory committee's note (1963 amendment)).  Because plaintiff has submitted no admissible evidence to support her allegations against them, all four named defendants are entitled to summary judgment on plaintiff's assault and battery claims.

**B.     Plaintiff's Invasion of Privacy Claim**

Plaintiff brings an invasion of privacy claim against Marchello that appears to be grounded alternatively in state common law or the Constitution.  In California, the right of privacy includes "the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity."  Gill v. Curtis Publ'g Co., 38 Cal.2d 273, 276 (1952).  Public displays of intimate or secluded aspects of a person's life can give rise to a claim for intrusion into private affairs.  See, e.g., Miller v. Nat'l Broad. Co., 187 Cal. App. 3d 1463, 1485 (1986).  The Due Process Clause of the Fourteenth Amendment also protects against arbitrary intrusion upon an individual's privacy interest in her naked body.  See Sepulveda v. Ramirez, 967 F.2d 1413, 1416 (9th Cir. 1992) (finding a "clearly established" within the Ninth Circuit to be free from invasions of bodily privacy, where a defendant parole officer entered a stall in which the plaintiff was providing a urine sample); York v. Story, 324 F.2d 450, 455 (9th Cir. 1963) (finding the "desire to shield one's unclothed figure from view of strangers" to be protected by the Due Process Clause).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | 'O'   JS-6 | |
| --- | --- | --- | --- |
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

Under either legal theory, this claim—which is brought only against Marchello—fails. Defendants proffer undisputed evidence that Marchello did not leave the apartment to escort plaintiff (allegedly naked) down the stairs and to the patrol car. Plaintiff has offered no evidence to support her allegation that Marchello seized plaintiff, handcuffed her, and forced her naked or nearly so to the patrol car. See SAC ¶¶ 67, 68. As detailed above, plaintiff admits that she cannot identify who handcuffed her and escorted her naked to the car, and plaintiff's presumption that the person was a female is insufficient to raise a triable issue of material fact as to Marchello's personal liability for invasion of privacy. See Miller, 187 Cal. App. 3d at 1489 (describing the tort of invasion of privacy as requiring "facts showing . . . direct and personal intrusions . . . caused by the defendant"); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

### C.   Plaintiff's False Imprisonment Claim

The SAC alleges a false imprisonment claim against Keffer, Crise, Kennedy, and Marchello under both "the Common Law of False Imprisonment" and 42 U.S.C. § 1983. SAC ¶ 70. To the extent this claim is based on state common law, the essential elements are "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 596 (2000).

To the extent this claim is based on federal law, Fourth Amendment principles apply. Larson v. Neimi, 9 F.3d 1397, 1401 (9th Cir. 1993) ("Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him."). An unreasonably lengthy or intrusive detention of a nonsuspect for investigative reasons, without particular justification or exigency, can violate the Fourth Amendment as applied to the states through the Fourteenth Amendment. See, e.g., Walker v. City of Orem, 451 F.3d 1139, 1139–1150 (10th Cir. 2006) (ninety-minute detention of non-suspects with no exigency justification could not be justified by an investigative rationale, and violated the Fourth Amendment); Mazzoni v. Morales, Civ. No. 07-432 LH/ACT, 2009 WL 865877, at *2 (D.N.M. June 9, 2009) ("Detaining Plaintiff in cuffs for up to two hours, even though the officers had no reason to suspect Plaintiff had committed a crime or was the suspect for whom they were searching, would be an unreasonable seizure in violation of the Fourth Amendment."). "Liability under section

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

1983 arises only upon a showing of personal participation by the defendant." List, 880 F.2d at 1045; see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) ("To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1083 . . . . [t]he plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient." (citations omitted)).

Plaintiff offers no evidence to support her allegations that Keffer, Crise, Kennedy, or Marchello were personally responsible for "confining her against her will in a police car," SAC ¶ 71. Instead, she relies solely on the allegations of the (non-operative) First Amended Complaint ("FAC"). See, e.g., Opp'n at 17–18 ("Plaintiff has alleged that defendant Marchello removed her from the apartment and brought her to a public balcony while plaintiff was wearing only a towel. [Citation to FAC] Plaintiff also alleges that . . . defendant Marchello caused plaintiff to walk unclothed to a patrol car in full view of the public."). As previously stated, a plaintiff may not avoid summary judgment by relying solely on her pleadings. Therefore, all four named defendants are entitled to summary judgment on this claim.

**D.     Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff alleges a claim for intentional infliction of emotional distress against Deputies Keffer, Crise, Kennedy, and Marchello. This tort consists of: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991). To support a claim for intentional infliction of emotional distress, the defendant's "conduct must be outrageous, i.e., beyond all bounds of decency; ordinary rude or insulting behavior is not enough to justify an award of damages." 5 Witkin, Torts § 451 (10th ed. 2005).

Keffer, Crise, Kennedy, and Marchello are entitled to summary judgment because plaintiff has offered no evidence that any of these defendants *personally engaged* in conduct directed at plaintiff which could be considered outrageous. Plaintiff again relies solely on the allegations in the FAC to oppose summary judgment on this claim, and neither points to nor submits identifying any of the four defendants as forcing plaintiff to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        'O'    JS-6

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| --- | --- | --- | --- |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

walk naked in front of neighbors and strangers.  Therefore, all four defendants named in this claim are entitled to summary judgment.

### E.    Plaintiff's Conspiracy Claim

The SAC alleges a conspiracy against Keffer, Crise, Kennedy, Marchello, Bates, Dendo, Conley, and Mancilla.[8]  Although the SAC cites 18 U.S.C. §§ 371, the criminal statute proscribing conspiracies to commit crimes against or defraud the United States, the Court construes this claim as arising under 42 U.S.C. §§ 1983 and 1985.[9]  To prove such a conspiracy, a plaintiff must "show an agreement or 'meeting of the minds' to violate [her] constitutional rights."  Ward v. EEOC, 719 F.2d 311, 314 (9th Cir. 1983).  Such an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement"; still, a plaintiff must point to some "facts probative of a conspiracy."  Id.; see also Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983) ("The mere fact that a conspiracy is alleged, however, will not defeat an adequately supported motion for summary judgment.").  "[E]ach participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Franklin v. Fox, 312 F.3d 423, 441 (9th. Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989)).  Moreover, a claim for conspiracy to violate constitutional rights cannot survive without a cognizable violation of constitutional rights under § 1983.  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 930 (9th Cir. 2004) (citing Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989)).

Defendants argue that plaintiff has not offered any facts supporting a joint plan between the defendants to intentionally violate plaintiff's rights.  In opposition, plaintiff states that the Court has previously found that plaintiff stated a claim for conspiracy.  But the fact that the Court previously denied a motion to dismiss, which tests the sufficiency

---

[8]Although only the first four are named in the caption of this claim for relief, the remainder of the allegations make clear that the latter four are alleged to have conspired against plaintiff as well.  See SAC ¶¶ 86–95.

[9]Plaintiff confirms this reading of the SAC in her brief.  Opp'n at 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**    **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|----------|----------------------|------|-------------------|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

of the allegations, is insufficient to withstand summary judgment, which requires that claims have evidentiary support.  Plaintiff also argues that Keffer, Crise, Marchello, and Kennedy's failure to mention plaintiff's complaints in their reports on the incident with Edmonds show a conspiracy to violate plaintiff's rights, and points to plaintiff's deposition testimony to the effect that the deputies did not listen to plaintiff's complaints.  See Turner Depo. at 107:14-16, 111:1-3.  But the fact that these defendants did not report a use of force against plaintiff does not, without more, give rise to an inference of the required "meeting of the minds" among these defendants to support a conspiracy.  Moreover, as discussed above, plaintiff has failed to offer admissible evidence of a "cognizable claim under § 1983" against these four defendants, which is a prerequisite to stating a conspiracy under § 1985.  See Olsen, 363 F.3d at 930 (affirming dismissal of a § 1985 conspiracy claim where the underlying § 1983 violation had been dismissed).

As to Bates, Dendo, Conley, and Mancilla, plaintiff's theory seems to be that the absence of any official investigation of plaintiff's complaint of force supports the inference of a conspiracy.  See Opp'n at 7, 13.  But as the Court previously explained in dismissing with leave to amend plaintiff's conspiracy claim against these defendants, "the absence of official records regarding the events at plaintiff's apartment, without more, is not 'plausibly suggestive' of an agreement among these defendants to violate plaintiff's constitutional rights."  Dkt. No. 38 at 9.  In short, plaintiff has produced no admissible evidence of a conspiracy, and even her allegations of a conspiracy only point to a conspiracy to cover up constitutional violations, not actually violate plaintiff's constitutional rights.  Therefore, all named defendants are entitled to summary judgment on plaintiff's conspiracy claim.  See Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 74 (D. Mass. 2012) (granting summary judgment where the "only evidence adduced by plaintiffs to support their [§ 1983] conspiracy claim suggests a cover-up rather than an agreement to perpetuate a violation").

### F.    Plaintiff's Inadequate Supervision and/or Training Claim

Plaintiff brings her final claim for relief against the County as well as Bacca, Bates, Conley, Dendo, Mancilla, and Does 30-40, for inadequate supervision or training resulting in constitutional violations.  As it has previously, the Court construes this claim as arising under 42 U.S.C. § 1983, and does not address defendant's arguments that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

claim fails under state law.[10]  Below, the Court discusses separately this claim as against the County, and against the individually named supervisory defendants. [11]

      1.    The County

          a.    Plaintiff Has Failed to Offer Admissible Evidence of an Underlying Violation.

To recover damages under § 1983 against a public entity or supervisors not personally involved in a constitutional violation, a plaintiff must prove a constitutional injury resulting from a "policy, practice, or custom of the local entity." Avalos v. Baca, 517 F. Supp. 2d 1156, 1166 (C.D. Cal. 2007) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). The "proper analysis" of a so-called "Monell claim" requires an assessment of "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  Plaintiff's Monell claim fails at the first step of this analysis because, as discussed above, she has not offered admissible evidence that any of the named defendant deputies violated her constitutional rights.  "Neither Monell . . . nor any of [the Supreme Court's] other cases authorize the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); see also Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996) (noting that a municipality is not liable under § 1983 for acts committed

---

    [10]Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights.  See Graham v. Connor, 490 U.S. 386, 393–94 (1989).

    [11]The Court need not separately analyze claims against the individual defendants in their official capacities, because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); see also Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a government officer in his official capacity is equivalent to a suit against the governmental entity itself.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

pursuant to municipal policy or custom unless the plaintiff shows that individual municipal officers violated her constitutional rights); <u>Boyd v. City of Oakland</u>, 458 F. Supp. 2d 1015, 1051 (N.D. Cal. 2006) ("Plaintiff failed to provide evidence to support allegations that Defendant Officers actually violated Mr. Boyd's rights. With no proof of an underlying rights violation, Plaintiff's derivative <u>Monell</u> claim is baseless."). Simply put, "[w]ithout an underlying violation by a County employee, plaintiffs cannot assert a § 1983 claim against the County under <u>Monell</u>." <u>Garcia v. Santa Clara County</u>, No. C 02–04360 RMW, 2004 WL 2203560, at *10 (N.D. Cal. Sept. 29, 2004).

At oral argument on this motion, plaintiff's counsel appeared to advance the theory that, even if there is no admissible evidence on which Marchello or any other named deputy could be found to have committed a constitutional wrong supporting municipal liability, plaintiff's claim against the County should survive because there is evidence from which a jury could conclude that unidentified LASD personnel violated plaintiff's rights. However, plaintiff did not plead this theory: the SAC asserts that Crise, Kennedy, Keffer, and (principally) Marchello were the deputies that harmed her, and does not allege direct wrongdoing by Doe defendant deputies in addition or in the alternative. "Unless a plaintiff includes allegations in her complaint or informs the defendant before the close of discovery of her intent to rely on previously undisclosed allegations, she may not assert them for the first time in opposing summary judgment." <u>McKinney v. Am. Airlines, Inc.</u>, 641 F. Supp. 2d 962, 983 (C.D. Cal. 2009); <u>see</u> <u>Pickern v. Pier 1 Imports (U.S.) Inc.</u>, 457 F.3d 963, 968–69 (9th Cir. 2006) (affirming a district court's refusal to consider at the summary judgment stage factual allegations not pled in the complaint); <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (holding that a party could not oppose summary judgment on a liability theory it had not pled or otherwise raised before the close of discovery because); <u>Freezor v. Patterson</u>, 896 F. Supp. 2d 895, 903 (E.D. Cal. 2012) ("It is axiomatic that violations not pled in the complaint cannot be considered by [a district court] at the summary judgment stage."). Therefore, plaintiff has failed to plead and offer admissible evidence of a constitutional violation for which the County could be held liable, and the County is entitled to summary judgment.

        b.    Even Assuming an Underlying Violation, Plaintiff Has Not Offered Admissible Evidence of a County Policy That Caused Such a Violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

Even if a theory of municipal liability for the unconstitutional actions of unidentified deputies were properly before the Court, or if plaintiff's failure to train or supervise claim could be construed as one not premised on constitutional violations by individual municipal employees,[12] the County would still be entitled to summary judgment because plaintiff has not adduced sufficient evidence of a policy that caused her

_____

[12]Courts have recognized that some failure to train claims are " 'systemic' in nature, suggesting that many municipal employees may be at fault 'even though no individual defendants were sued,' " or where individual defendants are exonerated. Ostling v. City of Bainbridge Island, No. 11-CV-5219 RBL, 2012 WL 4480550, at *11 (W.D. Wash. Sept. 28, 2012) (quoting Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002)); see Reinhardt v. City of Schenectady Police Dep't, 599 F. Supp. 2d 323, 336 (N.D.N.Y. 2009) (recognizing that despite the general rule that a "failure to train claim cannot exist where no individual defendant has committed a constitutional violation," a "narrow exception exists" where a "municipal body itself causes a constitutional injury through conduct divorced from an individual defendant's action").  For example, the Ninth Circuit has held that municipal liability could attach for an unjustified twelve-day detention caused by a city's lack of procedures to alleviate the problem of detaining individuals on the wrong warrant, even though the exoneration of individual defendants on claims of excessive force absolved the city of liability for the use of excessive force against the same plaintiff.  Fairley, 281 F.3d at 916–18; see also Panaderia La Diana, Inc. v. Salt Lake City Corp., 342 F. Supp. 2d 1013, 1034 (D. Utah 2004) (concluding that a city could be liable despite the plaintiffs' inability to identify the particular tortfeasor police officers where substantial evidence indicated, and the defendants did not contest, that a warrant's allegedly unconstitutional execution was performed according to "standard operating procedure").  In this case, however, plaintiff's failure to train allegations are unsupported by any admissible evidence beyond the fact of plaintiff's incident itself, let alone evidence sufficient to create triable issues as to whether (1) the County's training was inadequate in a particular way, (2) this training failure exhibited "deliberate indifference" to constitutional rights, and (3) "the inadequate training 'actually' caused' a deprivation of [the plaintiff's] constitutional rights."  Merrit v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989); see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) (plurality opinion) (evidence of a single incident of shooting by police could not establish a municipal policy of inadequate training).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

constitutional harms.  The Supreme Court has explained that "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 691).  A plaintiff may establish municipal liability in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Whether a particular official has final policy-making authority is a question of state law.  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations and quotation marks omitted).  In the absence of a formal government policy, a plaintiff must show a practice "so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.' "  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy."  Id. Additionally, this custom must be both the factual and proximate cause of the constitutional deprivation.  Id. at 920.

Plaintiff has offered no evidence that an official with "final policy-making authority" personally committed a constitutional tort against her, or ratified an unconstitutional decision related to her case.[13]  Nor does plaintiff offer any admissible

---

[13]Plaintiff has offered no evidence or argument on the policymaking authority of any defendant.  Although Sheriff Baca likely had policymaking authority, plaintiff has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**     **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

evidence of a formal policy that contributed to the alleged violations of her rights, or of any County policies—formal or informal—that would support the bulk of her conclusory failure to train and supervise allegations.[14]  However, in her statement of genuine issues in opposition to the motion for summary judgment, plaintiff does contend that she was harmed pursuant to an unofficial policy: that LASD deputies "routinely detain community members, including domestic violence victims, in the backseats of patrol cars without any individualized assessment of [] danger or suspicion," constituting a "pattern or practice of unreasonable seizures under the Fourth Amendment." See PGI ¶ 50.

In support of the theory that this backseat detention policy caused her constitutional harm, plaintiff cites only a letter from the Department of Justice Civil Rights Division ("DOJ") to Sheriff Baca, detailing the results of an investigation into "allegations of unconstitutional conduct by deputies at two stations located in the

---

offered no evidence that he made any decision whatsoever related to plaintiff's case.  And even if Baca had approved a decision not to discipline involved LASD personnel or further investigate plaintiff's complaint, it is doubtful that such approval, without more, could support municipal liability.  See  Haugen v. Brosseau, 339 F.3d 857, 875 (9th Cir. 2003), rev'd on other grounds sub nom. Brosseau v. Haugen, 543 U.S. 194 (2004) (holding that a city could not be held liable for a single instance of failing to discipline an employee's action); Burgess v. Fisher, 735 F.3d 462, 579 (6th Cir. 2013) (finding a sheriff's approval of one *post hoc* investigation of excessive force insufficient to establish Monell liability).

[14]For example, although her failure to train allegations touch on the use of unreasonable force against non-suspects, SAC ¶ 100, plaintiff has not pointed to *any* evidence, aside from her own incident, that would suggest that she was subjected to unreasonable force, handcuffed, or forced into public undressed *pursuant to County policy*.  Moreover, although plaintiff takes issue with the County's policies on reporting the use of force, id. ¶¶ 99–101, defendants offer evidence of the LASD's extensive formal policy on the reporting of uses of force, the sufficiency of which plaintiff does not contest, and plaintiff offers no evidence that this policy is customarily misapplied aside from her claim that it was ignored in her case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

Antelope Valley cities of Lancaster and Palmdale, California." See Pl. Ex. J. at 1.[15]  This investigation concluded that "LASD's Antelope Valley stations have engaged in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force in violation of the Fourth Amendment, the Fourteenth Amendment, and Title VI" of the Civil Rights Act of 1964.[16]  Id.  The investigation specifically found that "Antelope Valley deputies, in violation of the law, routinely detain community members, including domestic violence victims . . . in the backseats of patrol cars without any individualized assessment of danger or suspicion." Id. at 6.  The report noted that deputies at the investigated stations failed "to make constitutionally required determinations of criminality, threat, or risk when placing individuals in the rear of patrol cars." Id. at 26.

All of these findings, however, relate only to the two studied stations in Antelope Valley, whereas plaintiff's allegations concern only LASD personnel operating out of the South Los Angeles station.  Moreover, the investigation found that LASD has formal "policies that mandate judicious use" of backseat detentions, which Antelope Valley deputies had flouted in committing their violations.  Id. at 25.  These policies included training guidance teaching that backseat detentions are "a tactic used by deputy personnel who believe the person they are detaining may pose a threat or be an escape risk," and "should only be used when necessary and fully justified." Id. at 26.  The report states that the LASD's "backseat detention policy and training bulletin . . . provide generally good

---

[15] Defendants object that this evidence is inadmissible hearsay and as lacks foundation and authentication.  The Court OVERRULES these objections, finding that the document is self-authenticating, and admissible as a public record pursuant to the hearsay exception of Federal Rule of Evidence 803(8)(iii).

[16]The Antelope Valley is located approximately 70 miles northeast of the City of Los Angeles.  Pl. Ex. J.  Each of the named defendants present at the scene of or later involved in the investigation of the alleged misconduct was, at the time, working out of the South Los Angeles station.  See Conley Decl. ¶ 5; Bates Decl. ¶ 5; Marchello Decl. ¶ 5; Mancilla Decl. ¶ 5; Kennedy Decl. ¶ 5; Crise Decl. ¶ 5; Keffer Decl. ¶ 5; Dendo Decl. ¶ 5.  There is no indication in the record that any involved LASD employee was ever affiliated with an Antelope Valley station.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

guidance about limiting" backseat detentions, but that "Antelope Valley deputies have, for years, routinely ignored this guidance." Id. at 27.

Even interpreted in the light most favorable to plaintiff, plaintiff has not met her burden of producing evidence that could support findings that an informal policy so established as to have the force of law both existed and caused her alleged constitutional deprivations. The DOJ investigation's findings concerned the conduct of deputies operating out of two offices located seventy-plus miles from the offices out of which the personnel that responded to plaintiff's apartment worked, and plaintiff has produced no evidence of similar prior incidents or training deficiencies involving deputies from the South Los Angeles office or any other LASD office outside of the Antelope Valley. Nor has plaintiff pointed to evidence of specific deficiencies in the training of any deputy involved in her incident, or otherwise attempted to establish a causal link between the findings of the DOJ report and plaintiff's interactions with LASD personnel. Without evidence of a widespread policy or policies that caused her constitutional deprivations, plaintiff essentially seeks to impose respondeat superior liability on the County for the alleged actions of unidentified employees in a single incident, which the applicable law does not permit. See Tuttle, 471 U.S. at 821 (holding it error to allow the jury to impose municipal liability on the basis of a single incident); Trevino, 99 F.3d at 920 (granting summary judgment to a city where the evidence fell "far short of establishing a 'persistent and widespread' practice such that it constitutes 'permanent and well settled' city policy"). Accordingly, even if plaintiff had pled and offered admissible evidence of an underlying constitutional violation, summary judgment in favor of the County would still be appropriate.

2.      Individual Defendants

"Liability under § 1983 arises only upon a showing of personal participation by the defendant." Avalos, 517 F. Supp. 2d at 1166 (citing Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)). Accordingly, supervisors are not "vicariously liable" for the constitutional violations of their subordinates. Peralta v. Dillard, 744 F.3d 1076, 1085 (9th Cir. 2014); see Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). However, supervisors "can be liable for their own conduct." Peralta, 744 F.3d at 1085. "A supervisor may be liable if there exists either (1)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**      **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). The requisite causal connection may be established when an official "sets in motion 'a series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II v. Clark Cnty. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

a.      Baca and Dendo

Defendants have presented undisputed evidence that neither Baca nor Dendo were involved in the incident at plaintiff's apartment, or in hiring, training, supervising anyone directly involved; in fact, there is no evidence that either even knew about any of plaintiff's allegations prior to this lawsuit. Therefore, there is no evidence to support these defendants' liability on a failure to train or supervise theory, and Baca and Dendo are entitled to judgment as a matter of law. See Hansen, 885 F.2d at 646 (affirming a grant of summary judgment in favor of a chief of police where there was no evidence that he was personally involved in the alleged constitutional violations); Avalos, 517 F. Supp. 2d at 1166–68 (granting summary judgment in favor of a sheriff where there was no evidence that he was involved in causing or ratifying alleged constitutional violations).

b.      Bates, Conley, and Mancilla

Plaintiff, in essence, argues that Bates, Conley, and Mancilla are liable for inadequate supervision because they failed to investigate properly plaintiff's complaint that she was subjected to unreasonable force and escorted through public in a state of undress, or the fact that plaintiff was in the back of an LASD patrol car. Plaintiff's claim fails against these defendants as well.

In Jones v. County of Sacramento, No. CIV 2:09-1025 WBS DAD, 2010 WL 2843409 (E.D. Cal. July 20, 2010), the plaintiff alleged that he was mistreated during a brief detention at a county jail. The sheriff, the commander of the jail, and an officer with the county's Correctional and Court Security Services, who were all sued as supervisory defendants for approving an investigation clearing the directly involved officers of wrongdoing, moved for summary judgment. Id. at *1. The plaintiff argued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

that, although these defendants were not present when his rights were violated, they were liable for acquiescing in and ratifying his mistreatment by failing to take corrective or disciplinary action after reviewing plaintiff's complaint.  Id. at *6.  The plaintiff offered evidence that the same officers had been the subject of excessive force complaints in the past, and presented expert testimony to the effect that the supervisors should have sustained plaintiff's citizen's complaint against the officers.  See id. at *3–4, *7.  Reviewing this circuit's precedents on individual supervisory liability for acquiescing in or ratifying constitutional deprivations, the court concluded that "the Ninth Circuit has found a supervisor's conduct sufficient to establish the requisite causal link only when the supervisor engaged in at least some type of conduct *before* the unconstitutional incident and the supervisor knew or should have known that his conduct could cause the constitutional violation the plaintiff suffered."  Id. at *7 (emphasis in original).  The court therefore determined that "a supervisor's isolated and subsequent ratification of an officer's conduct—even in light of expert testimony suggesting that the supervisor should have sustained the citizen complaint—can never be sufficient to show that the supervisor caused the officer's conduct."  Id. at *7.  Because the only evidence of pre-incident conduct the plaintiff submitted consisted of prior complaints of which the officers had been exonerated, and with which the supervisory defendants were not involved, the court granted summary judgment, explaining that evidence that the defendants "mishandled plaintiff's complaint and should have sustained his allegations and taken remedial action against the officer defendants" was "not sufficient to show that [the supervisors] caused the officer defendants[] to mistreat plaintiff" on the date of the alleged incident.  Id. at *8.

Here, plaintiff has offered substantially less evidence than that found insufficient to withstand summary judgment in Jones.  Plaintiff has offered *zero* evidence of pre-incident conduct by these supervisory defendants, or of prior complaints against any deputy alleged to have been involved.  Nor, unlike in Jones, is there expert testimony that these defendants should have done something different with regard to plaintiff's complaints.  "Put simply, the supervisor defendants' conduct after the alleged unconstitutional incident cannot be said to have caused that incident."  Id. at *8.  Therefore, Bates, Conley, and Mancilla are entitled to summary judgment on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**     **JS-6**

| Case No. | 2:13-cv-04149-CAS-VBK | Date | December 16, 2014 |
|---|---|---|---|
| Title | NANCY TURNER v. THE COUNTY OF LOS ANGELES, ET AL. | | |

### G.    Punitive Damages

Finally, defendants argue that they are entitled to summary judgment on the issue of punitive damages for any claims that survive this motion.  Because the Court concludes that defendants are entitled to summary judgment on all of plaintiff's claims, this issue is moot.

## V.    CONCLUSION

In accordance with the foregoing, the Court GRANTS defendant's motion for summary judgment.

IT IS SO ORDERED.

                                                          00          :          00

                              Initials of Preparer                    CMJ